UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **United States of America,** Plaintiff, vs. **Jeffery Raymond Wilson,** **Defendant.** | No. 3:25-cr-00180-YGR Oakland, California August 7, 2025 1:01 p.m. |
| **United States of America,** Plaintiff vs. **Lawrence Gacad,** Defendant. | No. 3:25-cr-00181-YGR |

**BEFORE: THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS VIA ZOOM VIDEOCONFERENCE**

**CHANGE OF PLEA**

**Official Court Reporter:** (By Zoom Videoconference)
**Andrea K. Bluedorn, RMR, CRR**
Northern District of California
14418 S 42nd Street
Phoenix, Arizona 85044
(715) 965-2298

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

## A P P E A R A N C E S

For the Plaintiff:
U.S. ATTORNEY'S OFFICE, NORTHERN DISTRICT OF CALIFORNIA
By: **Andrew Jay Paulson, Esq.**
1301 Clay Street, Suite 340S
Oakland, CA 94612

For MR. WILSON
FEDERAL DEFENDER'S OFFICE, NORTHERN DISTRICT OF CALIFORNIA
By: **Tamara Crepet, Esq.**
55 Market Street, Suite 820
San Jose, CA 95113

For MR. GACAD:
SIERRA DUGAN LAW
By: **Sierra Promise Dugan, Esq.**
420 3rd Street, Suite 250
Oakland, CA 94607

**P R O C E E D I N G S**

COURTROOM DEPUTY: Good afternoon, everyone. Calling the criminal matters 25-cr-180-YGR, United States of America versus Jeffery Raymond Wilson. And 25-cr-181-YGR, United States of America versus Lawrence Gacad. Parties, please state your appearances for the record, starting with the Government.

MR. PAULSON: Good afternoon, Your Honor. Andrew Paulson on behalf of the United States.

THE COURT: Good afternoon.

MS. DUGAN: And good afternoon, Your Honor. Sierra Dugan appearing with Mr. Gacad who appears before the Court out of custody.

MS. CREPET: Good afternoon, Your Honor. Tamara Crepet on behalf of Jeffery Wilson, who is present and out of custody.

THE COURT: All right. So, Mr. Cuenco, is there any chance we can turn your camera to see Ms. Dugan and her client?

COURTROOM DEPUTY: I think they're on the middle camera.

MS. DUGAN: I can see us here, Your Honor.

THE COURT: Okay. Great. I couldn't see you before.

Okay. I understand from your attorneys that you reached an agreement with the Government -- you're going to have to take off your mask -- and you would like to change your

plea. Is that correct?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: All right. I'm going to ask the courtroom deputy to place both of you under oath and then I'll give you more directions.

COURTROOM DEPUTY: Please raise your right hands.

(JEFFERY RAYMOND WILSON, a witness herein, was duly sworn or affirmed.)

(LAWRENCE GACAD, a witness herein, was duly sworn or affirmed.)

MR. GACAD: I do.

MR. WILSON: I do.

COURTROOM DEPUTY: Thank you.

THE COURT: All right. So I'm going to ask you a series of questions, and, Mr. Wilson, you will answer first because your case is 25-180.

And then tell me how I pronounce your name properly, sir.

MR. GACAD: It's pronounced Gacad, Your Honor.

THE COURT: All right. And, Mr. Gacad, you will answer second because your case is 25-181. That way the transcript is nice and clear.

At any time during our discussion today, you need to speak with your lawyer, will you agree to let me know so I can

provide you with that opportunity?

MR. WILSON: I will, Your Honor.

MR. GACAD: I will, Your Honor.

THE COURT: All right. Ms. -- you need to move to the side so he can be on the mic. We don't have a court reporter in the courtroom, and she can only hear you through these microphones. All right.

You understand?

MR. WILSON: Yes, I do, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: If at any time during our discussion you do not understand my question, will you agree to let me know so that I can rephrase?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Do you both understand that you have been placed under oath, and that means you must tell me the truth in response to my questions. If you fail to do so, the United States Government can bring charges against you in addition to the charges that we're discussing here in court.

Do you understand?

MR. WILSON: I understand, Your Honor.

MR. GACAD: I understand, Your Honor.

THE COURT: All right. I'm going to start with some basics for each of you. Mr. Wilson, we'll start with you

first.

What is your full name?

MR. WILSON: Jeffery Raymond Wilson.

THE COURT: Have you ever gone by any other name?

MR. WILSON: No, Your Honor.

THE COURT: Okay. Where were you born?

MR. WILSON: Sacramento, Your Honor.

THE COURT: And what is your age?

MR. WILSON: Thirty-four, Your Honor.

THE COURT: What is the highest level of education you have achieved?

MR. WILSON: Some college.

THE COURT: So I take it you can read and write English?

MR. WILSON: That's correct, Your Honor.

THE COURT: Within the past 24 hours, have you had any medications?

MR. WILSON: No, Your Honor.

THE COURT: Any drugs whether legal or not?

MR. WILSON: No, Your Honor.

THE COURT: Any alcoholic beverages?

MR. WILSON: No, Your Honor.

THE COURT: Is there any reason why you would not be able to think clearly here in court?

MR. WILSON: No, Your Honor.

THE COURT: Okay.

Mr. Gacad, what is your full name?

MR. GACAD: Lawrence Paul Soriano Gacad, Your Honor.

THE COURT: And spell the -- it's Paul then spell your next name.

MR. GACAD: Lawrence Paul Soriano, S-O-R-I-A-N-O, Your Honor.

THE COURT: Okay. Have you ever gone by any other name?

MR. GACAD: No, Your Honor.

THE COURT: Where were you born?

MR. GACAD: San Jose, California.

THE COURT: How old are you?

MR. GACAD: Thirty-three, Your Honor.

THE COURT: What's the highest level of education you've achieved?

MR. GACAD: Master's Degree, Your Honor.

THE COURT: In what?

MR. GACAD: Organizational leadership.

THE COURT: Again, I take it you can read and write English?

MR. GACAD: Yes, Your Honor.

THE COURT: Have you taken any medications in the last 24 hours?

MR. GACAD: No, Your Honor.

THE COURT: Any drugs whether legal or not?

MR. GACAD: No, Your Honor.

THE COURT: Any alcoholic beverages?

MR. GACAD: No, Your Honor.

THE COURT: Is there any reason why you could not think clearly in court today?

MR. GACAD: No, Your Honor.

THE COURT: Okay. Do each of you understand that you have the right -- let me just say first the purpose of today's proceedings is to review your constitutional rights. All of those rights are outlined in your agreement with the Government, but we're going to review them orally here in court.

Do you understand?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Okay. Do you each understand that you have the right to maintain your not guilty plea?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: And do you understand that you have the right to a jury trial?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: You understand you have the right to be

represented by an attorney at all stages of the proceedings and if you can't afford one, the Court will appoint one to represent you. You also have the right to represent yourself but only with the Court's approval.

Do you understand?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Now, I mentioned a right to a jury trial. And to be more specific, what I mean by that is that the Government -- if you don't change your plea -- has to actually prove its case. And to prove its case, what they have to do is they have to present evidence to a jury. Twelve jurors would sit in that box over there and they would have to unanimously agree that each and every element of each and every charge of the crime that has been brought against you has been proved beyond a reasonable doubt.

They do that by way of bringing in people who testify; witnesses, who testify under oath. They could be experts. They could be lay witnesses. They could also bring in physical evidence.

But the point is whatever the Government has, whether it's physical, audible, whatever it is, they have to bring it to court. They have to present it to a jury.

You understand?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: You then have the right to see, confront, and cross examine all of those -- all of that evidence. You also have the right to remain silent, and that means that no one can compel you to testify against yourself, nor do you have any obligation whatsoever to present evidence against yourself or to present any evidence whatsoever.

Do you understand?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: The burden always lays with the Government.

Do you understand? Do you understand?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Now, you also have the right, if you so choose, to testify and to present evidence. In fact, you have the right to use the power of the Court to compel the attendance of witnesses and production of other kinds of evidence to be brought into court on your behalf and in your defense.

Do you understand?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: If you change your plea today, do you

understand you are giving up all of these trial related rights?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: If we don't have a jury verdict, that means -- or if we don't have a trial, that means we don't have a jury verdict. And if we don't have a jury verdict, then there's nothing to appeal.

Do you understand that basic premise?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Okay. In your agreements with the Government, do you understand that you are giving up virtually all of your appellate rights, you're leaving very little -- or you're left with very little.

Do you understand that, generally speaking?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Okay. In paragraphs four and five of your agreements -- and if your attorneys will direct you to that. And, Mr. Wilson, yours starts at the bottom of page 5. Mr. Gacad, yours is on page 4.

I'm not going to read the whole paragraphs, but generally summarize, which is there it indicates to you all that you agree to give up your right to appeal your conviction and the judgment or any order of this court with respect to any

aspect of your sentence, including challenging the sentence on principles of constitution or any orders of forfeiture or restitution. What you keep -- and that's why I said this is a very broad based waiver of your appellate rights -- you keep your right to argue that your counsel was ineffective or that your statute exceeded the statutory maximum.

Do you understand that?

MR. WILSON: I understand, Your Honor.

MR. GACAD: I understand, Your Honor.

THE COURT: And then, in fact, you go on to say in the next paragraph that you agree that you're not going to file any other kind of motion, no collateral attack on your conviction or sentence, except, again, to say that your attorney was ineffective.

Do you understand?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: All right. These are very broad based waivers.

Do you also understand that if you change your plea today, you do so not knowing what your sentence will be.

Do you understand?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Let's talk a little bit about sentencing.

It is the Court, it is the judge who decides what is an appropriate sentence. The statute requires us to impose a sentence that is reasonable but not necessarily -- not greater than is necessary to achieve the objections -- the objects or objectives of sentencing.

The first thing that we must always do in the case of a sentence is we have to consider the sentencing guidelines. Have you seen a book that looks something like this?

MR. WILSON: I have, Your Honor.

THE COURT: All right. Sometimes they're different colors, sometimes the lawyers do it online. But this is the current -- or the 24 version of the United States Sentencing Guidelines Manual. And in here are certain guidelines that give us points to identify what the level of -- offense level is for the crime that's been committed.

We have to evaluate what is in front of us and make the determination as to the offense level and then we cross reference that number with the criminal history category which ranges from I to VI. We use those two numbers and then we look at a sentencing table. See something like this? Yes?

MR. GACAD: Yes, Your Honor.

MR. WILSON: Yes, Your Honor.

THE COURT: So what I've highlighted here in orange are the offense level. What I've highlighted in yellow across the top is the criminal history categories. So, in this case,

as a -- for instance, we'll just use Mr. Wilson's -- the parties believe that your adjusted offense level is a 19. So we would go down to row 19 and I'm assuming Criminal History Category I.

MS. CREPET: Yes, Your Honor.

THE COURT: So Criminal History Category I. If I do that, if I use the first category or the first column, that tells me that under the guidelines, an appropriate sentence would be somewhere in the range of 30 to 37 months.

If, for instance, it was a Criminal History Category III, for number 19, I would go to the third column. And the third column would say, okay, start somewhere in the range of 37 to 46 months. That's the way the table works. You figure out the offense level, the higher the criminal history category, the higher the starting range.

Do you understand?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: After that, we have to consider a whole other set of factors. These factors come from Title 18 of the United States Code Section 3553(a). And they require that the Court consider factors such as the seriousness of the offense, the need to promote respect for the law, the need to protect the public, the need to have deterrence so that this doesn't ever happen again. More specifically to a defendant and, more

generally, to the community. And just punishment on top of other things.

We also look at the individual and their whole circumstantial circumstances. I call it the totality of the circumstances. All of that work has to be done before an appropriate sentence can be determined. None of that work has been done in your cases, and that's why I said no one in this courtroom can tell you what I'm going to do.

They can't read my mind, and even if they could, it wouldn't matter because I haven't worked on your case and I don't know what I would make a determination as to an appropriate sentence.

Do you understand?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Is anyone forcing you in any way to change your plea?

MR. WILSON: No, Your Honor.

MR. GACAD: No, Your Honor.

THE COURT: Are you doing it to protect someone else?

MR. WILSON: No, Your Honor.

MR. GACAD: No, Your Honor.

THE COURT: Has anyone promised you anything in exchange for a plea, other than what's in your agreement with the Government?

MR. WILSON: No, Your Honor.

MR. GACAD: No, Your Honor.

THE COURT: So you're doing it voluntarily?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: As part of this agreement with the Government, at some point you would be placed on supervised release. And you're required under the agreement to think -- yes. Is there a special search clause in here?

MR. PAULSON: I believe so, Your Honor. It's -- for Mr. Wilson, it's on page 8. And for Mr. Gacad, it's on page 5.

THE COURT: I see it now. Thank you.

So this search condition requires that you submit your person, residence, office, vehicle, electronic devices and their data, including cell phones, computers, and electronic storage media, and any property under your control to search by a United States probation officer or any Federal, State, or local law enforcement officer at any time of the day or night, with or without suspicion, with or without cause.

Failure to submit to this kind of search can be grounds for revocation and you can be placed in custody. You must warn residents with whom you live that you are subject to that provision.

Do you understand?

MR. WILSON: I understand, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: All right. Mr. Gacad, go ahead and sit down. Let me talk just to Mr. Wilson for a moment.

Mr. Wilson, let's take a closer look at your agreement. Not in the back, you're at counsel table.

Under this agreement, you are pleading guilty to Counts 1 through 6 of the captioned information which charges you with five counts of sexual abuse of a ward in violation of Title 18 of the United States code at Section 2243(b) plus one count of a false statement to a government agency in violation of Title 18 of the United States code Section 1001(a)(2).

Do you understand that generally?

MR. WILSON: I understand, Your Honor.

THE COURT: With respect to the five counts, in order for the Government to prove its case, they would have to prove the following: One, that you knowingly engaged in a sexual act with a victim.

Do you understand?

MR. WILSON: I understand, Your Honor.

THE COURT: Two, at that time -- or at the time, the victim was in official detention at FCI Dublin.

Do you understand?

MR. WILSON: I understand, Your Honor.

THE COURT: And, three, at the time, the victim was under your custodial, supervisory, or disciplinary authority.

Do you understand?

MR. WILSON: I understand, Your Honor.

THE COURT: The maximum statutory penalties are as follows, a maximum prison sentence of 15 years. Do you understand?

MR. WILSON: I understand, Your Honor.

THE COURT: And maximum fine of 250,000.

Do you understand?

MR. WILSON: I understand, Your Honor.

THE COURT: A maximum supervised release term of life and a minimum term of five years.

MR. WILSON: Yes, Your Honor.

THE COURT: $5,000 mandatory assessment pursuant to Title 18 of the U.S. Code at Section 3014 plus a mandatory assessment of $100 per felony count.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: Restitution and forfeiture as deemed appropriate by the Court.

Do you understand?

MR. WILSON: Yes, Your Honor.

THE COURT: Regarding the offense of a false statement to a government agency, for the Government to prove its case, it would have to prove the following, one, that you made a false statement.

Do you understand?

MR. WILSON: Yes, Your Honor.

THE COURT: That the statement was made in a matter within the jurisdiction of the Department of Justice Office of Inspector General which we were refer to as DOJOIG.

Do you understand?

MR. WILSON: Yes, Your Honor.

THE COURT: Three, that you acted willfully, that is, that you acted deliberately and with the knowledge that both the statement was untrue and your conduct was unlawful.

Do you understand?

MR. WILSON: Yes, Your Honor.

THE COURT: Four, that the statement was material to the activities or decisions of the DOJOIG. That is, it had a natural tendency to influence or was capable of influencing the agency's decisions or activities.

Do you understand?

MR. WILSON: Yes, Your Honor.

THE COURT: And, five, that the statement involved offenses under Chapter 109A of Title 18 of the United States Code.

Do you understand?

MR. WILSON: Yes, Your Honor. The maximum statutory penalties are as follows: A maximum prison term of eight years.

Do you understand?

MR. WILSON: Yes, Your Honor.

THE COURT: Maximum fine of $250,000.

Do you understand?

MR. WILSON: Yes, Your Honor.

THE COURT: A maximum supervised release term of three years.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: And $100 dollars per felony count.

Do you understand?

MR. WILSON: Yes, Your Honor.

THE COURT: Do you also understand that given the multiple violations, the Court may order each sentence to run consecutively as opposed to concurrently, that means one after the other as opposed to at the same time.

MR. WILSON: Yes, Your Honor.

THE COURT: Before I could allow you to plead guilty, I need to make sure that there is a sufficient independent factual basis for the plea. In your plea agreement, you have agreed to certain facts with the Government. Correct?

MR. WILSON: Yes, I have, Your Honor.

THE COURT: Okay. And have you had an opportunity to ensure that all of those dates and specific facts are accurate?

MR. WILSON: Yes, I have, Your Honor.

THE COURT: All right. Then I'll have you read to me what you did beginning on the top of page 3.

MR. WILSON: Between July 18th, 2021 and September 27th, 2022, I was employed as a correctional officer for the Bureau of Prisons and was assigned to work at FCI Dublin, an all female prison -- a Federal Prison located in Northern District of California. During that time, I served as a health technician slash paramedic. In that role, I was responsible for providing emergency assessments and medical care to inmates.

As a correctional officer, I was able to discipline inmates, including by writing incident reports, searching inmates cells, and having their person searched. Monitoring the inmate's phone calls, video calls, emails, and restraining the inmates using physical force and other things. In approximately August 2021, I started interacting with CS as she began taking medications prescribed to her for seizures.

I flirted with CS and asked her if I could watch her video visits with her family, which I did later -- or which I later did. I encouraged CS to transfer to the prison to the camp because there are fewer medical staff at the camp who would be able to see my interactions with CS. I told CS that we would have a little bit more fun at the camp.

I also exchanged notes with CS that discuss personal details of our lives. On approximately March 14th, 2022, CS

transferred to the camp. Shortly after CS transferred to the camp, I provided CS a cell phone to -- to avoid detection by my employer and family.

I used a third-party messaging application to create a phone number other than the one I used. I then provided that new number to CS, therefore, CS and I could communicate with one another with CS using the cell phone I provided her and me using the number I've created for the communications.

In additions to talking with CS via text message around audio calls, CS also used the cell phone to take naked photos of herself and send me -- and send them to me via text message. On May 21st, 2022, on my way to work, I used cash to purchase a $60 prepaid credit card from Safeway near FCI Dublin. Shortly thereafter, I provided the credit card to CS which she used to purchase goods.

After CS transferred to camp, I continued to watch -- I continued to see her about three to four times per week at pill line where I dispersed to CS the medications that were prescribed to her.

During those encounterments, CS would stand at the end of the line so that she would be the last inmate to receive medications. After the other inmates left the pill line, I would take her to a nearby medical room under the gouge(sic) of checking her vital signs. Once inside, I would kiss and touch CS in a sexual manner.

On one occasion in a medical room in the SCI Dublin Camp Medical Department between on or about March 14th, 2022 and on or about August 16th, 2022, I digitally penetrated CS's genital openings. When I digitally penetrated CS's genital opening, I did so with the intent to arouse or satisfy my sexual desires and with the intent to arouse or gratify CS's sexual desires.

On another occasion, between on or about March 14th, 2022, in -- on or about August 16th, 2022, I was in the medical room in the FCI Dublin Camp Medical Department with CS. I told her I have a surprise for you. CS then performed oral sex on me, meaning, that I caused contact between my penis and CS's mouth.

On four other occasions between on or about March 14th, 2022 and on or about August 16th, 2022 in the medical room in FCI Dublin Camp Medical Department, CS performed oral sex on me, meaning that I caused contact between my penis and CS's mouth. During one of those incidents, two of CS's friends walked into the room. I told them I thought you were smarter than this. Not a word of this to anyone.

I pulled CS who was crying up from where she was kneeling on the floor and then left the room. At the time of the incident discussed above in paragraphs 2B through G, I was employed as a correctional officer at FCI Dublin and CS was an inmate in official detaining at FCI Dublin. Consequently, at

the time of these incidents, CS was under my custodial, supervisional, or disciplinary authority. At all -- at the time of those incidents, FCI Dublin was a United States Federal Prison.

My relationship with CS ended in August 2022 which I was -- when I was reassigned within the prison for unrelated reasons. Over the month that followed, I factory resetted the phone I had used to communicate with CS no fewer than 40 times; including twice on August 16th, twice on August 18th, twice on August 19th, three times on August 21st, three times on August 22nd, and four times on August 23rd, 2022.

On September 6th, 2024, I voluntarily spoke with the special agents with the DOJOIG. During the interview, I stated that I never had sexual contact with CS and that I've never given CS contraband. Those statements were false. In making those statements, I acted willfully. That is, I acted deliberately with -- and with knowledge both that the statements were untrue and my conduct was unlawful.

My statements that I have never had sexual contact with CS and that I never gave her -- that I've never given CS contraband were made within a matter of jurisdiction of DOJOIG. Moreover, the statements were material to the activities or decisions of the DOJOIG. That is, the statements had -- the statements had a natural tendency to influence or were capable of influencing the DOJOIG's decision or activities.

Finally the statements regarding sexual contact with CS, were both offenses under Chapter 109A of Title 18 of the United States Code.

THE COURT: Do you have the original agreement?

MR. PAULSON: Yes, Your Honor. I believe Ms. Crepet has it.

THE COURT: Before signing this agreement, did you have an opportunity to read and review each and every paragraph?

MR. WILSON: I have, Your Honor.

THE COURT: Did you have an opportunity to discuss each and every paragraph with your lawyer?

MR. WILSON: Yes, Your Honor.

THE COURT: To the extent you had any questions, and without telling me anything that was said, were your questions answered?

MR. WILSON: Yes, Your Honor.

THE COURT: The signature that's at the very top, can you see it? Is that your signature?

MR. WILSON: That's my signature, Your Honor.

THE COURT: So before you signed it, you read it, reviewed it, you understood and you agree to everything in it?

MR. WILSON: Yes, Your Honor.

THE COURT: Okay. Ms. Crepet, is that your signature on the bottom?

MS. CREPET: It is, Your Honor.

THE COURT: And can you assure me, based on upon your professional opinion, that your client understands the terms of this agreement and all of the rights he's giving up by pleading guilty?

MS. CREPET: He does, Your Honor.

THE COURT: All right. Mr. Paulson, that is your signature in the middle?

MR. PAULSON: That's correct, Your Honor.

THE COURT: And you have the authority to resolve this matter on behalf of Mr. Missakian.

MR. PAULSON: Yes, Your Honor, I do.

THE COURT: Is there any reason why this plea should not now be taken?

MR. PAULSON: No, Your Honor.

MS. CREPET: No, Your Honor.

THE COURT: Is a formal reading of the information waived?

MS. CREPET: It is, Your Honor.

THE COURT: And, Mr. Wilson, what is your plea to the information which charges you with five counts of sexual abuse of a ward in violation of Title 18 of the United States Code at Section 2243(b) and one count of false statements to a government agency in violation of Title 18 of the United States Code at Section 1001(a)(2) for conduct here in the Northern

District of California. Guilty or not guilty?

MR. WILSON: Guilty, Your Honor.

THE COURT: The Court finds the defendant is fully competent and capable of entering into an informed plea, that he is aware of the nature of the charges and the consequences of that plea. The Court further finds that he knowingly, voluntarily, intelligently with the advice of counsel enters a guilty plea. The Court, therefore, accepts the guilty plea and finds you -- well, let me also just say that the Court further finds there's a sufficient, independent factual basis for the plea.

The Court, therefore, accepts the plea and finds you guilty of those six offenses. I will have some more instructions for you but if you'll have a seat with your attorney at the table. Let me now talk to Mr. Gacad. Thank you.

MR. WILSON: Thank you, Your Honor.

THE COURT: All right. Sir, with respect to you, under your agreement, you were agreeing to plead guilty to Count 1 of the information which charges you with one count of abuse of sexual contact in violation of Title 18 of the United States Code at Section 2244(a)(4).

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: With respect to this offense, for the

Government to prove its case, it would need to prove the following elements beyond a reasonable doubt. One, that you knowingly engaged in a sexual contact with the victim.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: Two, at the time, the victim was in official detention at FCI Dublin.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: And, at the time, the victim was under your custodial, supervisory, or disciplinary authority.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: The maximum prison term for a violation of this statute is a maximum term of two years.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: Maximum fine of 250,000.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: Maximum supervised release term of life with a minimum term of five years.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: Mandatory special assessment of $5,000

pursuant to Title 18 of the U.S. Code at Section 3014, and $100 mandatory assessment per felony count.

Do you understand?

MR. GACAD: Yes, Your Honor.

THE COURT: Again, with respect to you, before I can allow you to plead guilty, there must be a sufficient independent factual basis for the plea. You too have agreed on a specific factual basis with the Government. Did you have an opportunity to review all of those details?

MR. GACAD: Yes, Your Honor.

THE COURT: All right. If you'll tell me then what you did in paragraph 2.

MR. GACAD: From July 18th, 2021 to June 14th, 2022, I was employed as a correctional officer for the Bureau of Prisons and was assigned to work at FCI Dublin, an all female Federal Prison located in Northern -- in the Northern District of California. In that role, I was responsible for the detention, correctional supervision, protection, control, and accountability of inmates.

As a correctional officer, I was also able to discipline inmates including by writing incident reports, searching inmate's cells, having their persons searched, monitoring the inmates phone calls, video chats, and emails, and restraining the inmates using physical force, among other things.

SL was an inmate at FCI Dublin during the entire time I worked at the prison. SL lived in one of the housing units where I was sometimes assigned as the guard on duty. On multiple occasions, beginning in approximately February 2022, SL and I exchanged handwritten notes, some of which were sexually explicit.

Additionally, in approximately May 2022, I began exchanging emails with SL using email accounts that I set up using fake names to disguise my identity. Some of these emails were sexually explicit. In approximately May 20222, SL showed me her naked body when I approached her cell while I was doing 9:00 p.m. rounds.

Between approximately March and June 2022, I kissed SL and touched her buttocks on multiple occasions. On one occasion, between on or about March 1st, 2022 and on or about June 14th, 2022, I escorted SL to the garbage compactor. While near the garbage compactor, I kissed SL and touched her buttocks with my hand.

When I grabbed SL's buttocks with my hands, I did so with the intent to arouse or gratify my sexual desires and with the intent to arouse or gratify SL's sexual desires. At that time, I was employed as a correctional officer at FCI Dublin and SL was an inmate who was in official detention there.

As a result, at the time of this incident, SL was under my custodial, supervisory, or disciplinary control.

Moreover, at the time of this incident, FCI Dublin was a United States Federal Prison. In June 2022, an investigator at FCI Dublin approached me and informed me that he had received an allegation that I was engaged in an appropriate relationship with SL -- inappropriate relationship with SL.

My resignation from BOP became effective a few days later on June 14, 2022. After I resigned, I continued to contact SL via email. I also spoke with SL several times on video chats she had with her parents. I remained in contact with SL until approximately May 2023.

THE COURT: Do you have the originals?

MS. DUGAN: Yes, Your Honor.

THE COURT: Mr. Gacad, I have your original agreement up here. Have you had sufficient opportunity to read each and every paragraph?

MR. GACAD: Yes, Your Honor.

THE COURT: Have you had sufficient opportunity to review each and every paragraph with your attorney?

MR. GACAD: Yes, Your Honor.

THE COURT: To the extent you had any questions, and without telling me anything that you said, were your questions answered?

MR. GACAD: Yes, Your Honor.

THE COURT: On the last page, page 9, there is a signature at the top. Can you see that signature and is it

yours?

MR. GACAD: Yes, Your Honor.

THE COURT: Before signing this agreement then, you had an opportunity to review it, read it, understand it, and agree to everything in here?

MR. GACAD: Yes, Your Honor.

THE COURT: Ms. Dugan, is that your signature on the bottom?

MS. DUGAN: It is, Your Honor.

THE COURT: And can you assure me, based upon your professional opinion, that your client understands the rights he is waiving as this -- as part of this agreement?

MS. DUGAN: Yes, Your Honor.

THE COURT: Mr. Paulson, again, that's yours in the middle?

MR. PAULSON: Yes, Your Honor.

THE COURT: And, again, with this one, you're authorized to -- by the United States Attorney in the Northern District?

MR. PAULSON: Yes, Your Honor.

THE COURT: Is there any reason why his plea should not now be taken?

MR. PAULSON: No, Your Honor.

MS. DUGAN: No, Your Honor.

THE COURT: Is a formal reading of the information

waived?

MS. DUGAN: It is waived. Thank you.

THE COURT: Then, Mr. Gacad, what is your plea to the sole count of the information charging you with abuse of sexual contact in violation of Title 18 of the United States Code at Section 2244(a)(4) for conduct here in the Northern District of California, guilty or not guilty?

MR. GACAD: Guilty, Your Honor.

THE COURT: The Court finds the defendant is fully competent and capable of entering into an informed plea, that he is aware of the nature of the charges and consequences of the plea, that he knowingly, voluntarily, and intelligently with the advice of counsel enters into a guilty plea. The Court further finds there's a sufficient independent factual basis for the plea. I, therefore, accept the plea and find you guilty of that one offense.

All right. If you'll come back to the front. You both now will be referred to probation.

Probation is the arm of the Court. It assists us with our sentencing function by gathering information so that we can -- so that we can properly sentence individuals. You will be interviewed by probation. You're entitled to have your attorney with you during the interview.

Probation will then write a written report and will share it with the parties. To the extent there are any

objections, the parties will try to resolve those with probation. If they cannot, I will resolve them or the Court will resolve them at your sentencing.

Do you understand the process?

MR. WILSON: Yes, Your Honor.

MR. GACAD: Yes, Your Honor.

THE COURT: Okay. You are both out of custody which means we will not do a sentencing for 90 days. That is, the first available day after November 5th. Because you're out of custody, and given my trial schedule, I might do you on a day that's not a Thursday.

So I can do the morning of the 19th.

MR. PAULSON: Your Honor, just for planning purposes, with respect to Mr. Wilson, the Government may call one witness at the sentencing. I think it will depend on what the PSR says and if there's some agreement that we can reach with the defense on the contents of the PSR. But we won't know that until we get the draft and can work through that issue so I wanted the Court to be aware of that.

THE COURT: Well, what we can do is schedule Mr. Wilson for November 6th which is past the 90 day requirement, and then you'll get it sooner. And then we would have enough time to still do it two weeks later on the 19th.

MR. PAULSON: That works for the Government.

MS. CREPET: We anticipate needing a plethora of

discovery, Your Honor, to the extent the Government is going to introduce what would be tantamount to a separate violation. So as long as the Government can get us all of the discovery in a timely manner, we would have no problem with that.

If there's a challenge and we may need to subpoena evidence, I don't know yet. It depends on what's produced. So we can certainly endeavor to have it together by the 19th, but there is -- there may be some slow downs for reasons that we can't control.

MR. PAULSON: We would work to get discovery out as soon as possible but there are, you know, central files, recorded calls to the extent there are any things like that.

THE COURT: Well, I think the question is whether probation is going to need more time.

MR. PAULSON: So I'm not sure -- I think the calls and central files and things would only be if she testified. That would only be relevant there, medical records as well as potential Giglio. So I'm not sure that probation would necessarily need to get that but I think the defense would.

MS. CREPET: We would certainly need that to put an objection in the PSR absent reaching some kind of agreement.

THE COURT: Let's set Mr. Wilson for November 6th and we can -- that would be for sentencing November 6th. I'm in trial -- or scheduled to be in trial. So we will set that at -- at 3:00 p.m.

COURTROOM DEPUTY: Excuse me, Your Honor. The afternoon will be used by Judge Olguin.

THE COURT: We'll be in a different courtroom.

COURTROOM DEPUTY: Yes, ma'am.

THE COURT: So what I will also do is you're going to have the PSR two weeks prior, right, or three?

MS. CREPET: We get the first draft, Your Honor, three weeks and then we have two weeks for objections, then we get the final and then we have one week to prepare for the sentencing.

THE COURT: Okay. So you get it October 16th?

MS. CREPET: Actually it might be four. It's four, Your Honor. Excuse me.

MR. PAULSON: Before the sentencing -- I think it's four weeks before the sentencing.

THE COURT: Okay. So I'm going to then --

MR. PAULSON: I think it's five weeks before, Your Honor. I'm sorry. I'm a lawyer, not a mathematician.

THE COURT: Okay. I'm going to put you on my calendar for a status October 23rd at 10:00 a.m. And that will -- you'll have it then for a few weeks and you'll be able to let me know by that date what we're doing.

MR. PAULSON: Yes, Your Honor.

MS. CREPET: I think that works well, Your Honor.

THE COURT: Okay. With respect to Mr. Gacad.

MR. PAULSON: Whatever the Court prefers, the Government is available.

MS. DUGAN: Yes, Your Honor. We don't anticipate any ancillary issues.

THE COURT: Then with respect to him, I would like to do that then on the 19th date after my trial. That will be November 19th at 10:00 a.m. Okay.

MS. CREPET: Yes, Your Honor.

MS. DUGAN: Yes, Your Honor. Thank you.

THE COURT: Anything else?

MR. PAULSON: Nothing from the Government, Your Honor.

MS. CREPET: Nothing from Mr. Wilson, Your Honor.

MS. DUGAN: No, thank you. Thank you, Your Honor.

THE COURT: All right. We're adjourned. Thank you.

COURTROOM DEPUTY: Court is adjourned.

---oOo---

**C E R T I F I C A T E**

I, ANDREA K. BLUEDORN, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED this 12th day of August, 2025.

/s/ Andrea K. Bluedorn

Andrea K. Bluedorn, RMR, CRR