CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ANDREW PAULSON (CABN 267095)
ALETHEA M. SARGENT (CABN 288222)
Assistant United States Attorneys

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
andrew.paulson@usdoj.gov
alethea.sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE GACAD,<br><br>Defendant. | **CASE NO. 4:25-cr-00181-YGR**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: November 19, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

Defendant Lawrence Gacad was a prison guard at FCI Dublin from July 2021 to June 2022. While in that position, he engaged in a physical relationship with one of the female inmates, S.L., over whom he had custodial, supervisory, and disciplinary control. On multiple occasions, Gacad kissed S.L. and grabbed her buttocks. After resigning from the Bureau of Prisons (BOP), Gacad maintained contact with S.L. via email and video chats. Eventually, after the Department of Justice Office of Inspector General (DOJ OIG) and Federal Bureau of Investigation (FBI) executed search warrants at Gacad's residence, he came clean, meeting with DOJ OIG and FBI agents and the U.S. Attorney's Office for a lengthy interview during which he truthfully discussed his crimes; his time at FCI Dublin, including information about

misconduct by other guards; and his actions after leaving BOP.

On August 7, 2025, Gacad pleaded guilty to one count of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(4).[1] Because of the severity of the offense and the fact that Gacad immediately and truthfully admitted his crimes, the government recommends that the Court sentence Gacad to 5 years' probation, with the first 12 months to be served on home detention, and a $100 special assessment.[2]

## II. OFFENSE CONDUCT

### A. The Charged Conduct

From July 18, 2021, to June 14, 2022, Gacad served as a correctional officer at FCI Dublin, an all-female federal prison located in the Northern District of California. In that role, he was responsible for the detention, correctional supervision, protection, control, and accountability of inmates. As a correctional officer, he was also able to discipline inmates, including by writing incident reports; searching inmates' cells; having their persons searched; monitoring the inmates' phone calls, video chats, and emails; and restraining the inmates using physical force, among other things.

S.L. was an inmate at FCI Dublin during the entire time Gacad worked at the prison. S.L. lived in one of the housing units where Gacad was sometimes assigned as the guard on duty. Beginning in approximately February 2022, S.L. and Gacad began to exchange handwritten notes, some of which were sexually explicit. This eventually escalated. In about May 2022, Gacad began exchanging emails with S.L. using email accounts that he set up using fake names to disguise his identity. Some of these emails were sexually explicit. In approximately May 2022, S.L. showed Gacad her naked body when he approached her cell while he was doing 9:00 p.m. rounds. Gacad did not ask or instruct S.L. to be naked for him.

Between approximately March and June 2022, Gacad kissed S.L. and touched her buttocks on multiple occasions. On one occasion between March 1, 2022, and June 14, 2022, Gacad escorted S.L. to the garbage compactor where he kissed her and touched her buttocks.

---

[1] The statutory maximum term of imprisonment for a violation of 18 U.S.C. § 2244(a)(4) is two years.

[2] The $5,000 mandatory special assessment under 18 U.S.C. § 3014(a) is no longer available as of September 30, 2025.

### B. Gacad Admits to the Charged Conduct and Talks to the Government

In June 2022, an investigator at FCI Dublin approached Gacad and informed him that he had received an allegation that he was engaged in an inappropriate relationship with S.L. A few days later, on June 14, 2022, Gacad resigned from the BOP. He nonetheless continued to contact S.L. via email and spoke with her several times on video chats she had with her parents. Gacad remained in contact with S.L. until approximately May 2023.

On May 13, 2024, FBI and DOJ OIG agents executed search warrants at Gacad's house in Arizona. He immediately indicated that he wanted to talk with the agents and the U.S. Attorney's Office. A few weeks later, on May 30, 2024, Gacad met with the prosecution team at the U.S. Attorney's Office. Over the course of several hours, Gacad fully and truthfully admitted his misconduct at FCI Dublin; discussed the culture and events that occurred at FCI Dublin while he was there, including misconduct by other guards; and told the government about his actions after he left FCI Dublin.

## III. THE GUIDELINES CALCULATION

### A. The PSR Accurately Calculates the Offense Level and Criminal History Category

The government agrees that Gacad does not have any criminal history points and therefore is a Criminal History Category (CHC) I. PSR ¶ 47. The PSR also properly calculates the Guidelines in this case, which are set forth here for the Court's convenience. *Id.* ¶¶ 35-43. With a CHC of I and a total offense level of 12, the advisory guidelines here are 10-16 months.

| **Count 1: Abusive Sexual Contact – 18 U.S.C. § 2244(a)(4)** | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Base offense level | § 2A3.4 | 12 |
| Specific Offense Characteristics:<br>- Victim in custody, care, or supervisory control of defendant | § 2A3.4(b)(3) | +2 |
| **Adjusted Offense Level** | | **14** |
| Acceptance of Responsibility | § 3E1.1 | -2 |
| **Total Offense Level** | | **12**[3] |
| **Guidelines Range (CHC I)** | | **10-16 months** |

[3] Because this case involves an offense under Chapter 109A of Title 18 of the U.S. Code, it qualifies as a "sex offense" under the Guidelines, which means that the zero-point offender reduction is unavailable. *See* U.S.S.G. § 4C1.1(5).

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id*. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in § 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution to any victims of the offense.

### B. The Parties' Joint Recommended Sentence is Sufficient but not Greater than Necessary

The seriousness of the offense, the history and characteristics of the defendant, the need for specific and general deterrence, and the need to avoid sentencing disparities all support the parties' recommended sentence in this case. To begin with, Gacad's crimes are serious. As a prison guard, he was in a position of power over S.L. and all the other inmates. The federal government invested in him vast power over the lives of those women—power that was supposed to be used to protect those women and rehabilitate them. Gacad, however, used that power to engage in a physical relationship with one of the inmates that involved multiple instances of him kissing her and grabbing her buttocks. This is a profound abuse of power and trust for which Gacad must be held accountable.

But while Gacad's crimes are serious, they are different in both kind and scope than any of the other FCI Dublin guards recently prosecuted for sexually abusing inmates. First, Gacad had one victim, while all the other guards that have been sentenced to date had multiple victims.[4] Second, the nature of

[4] This Court has presided over trials for three former FCI Dublin guards and has sentenced six

the physical contacts is different. After a few months of exchanging letters with one another, Gacad touched S.L.'s buttocks several times. In contrast, all the other cases involved some form of penetration, including digital penetration, oral sex, sexual intercourse, or a combination of the three.[5] Nor was there evidence that Gacad threatened or intimidated S.L. or any other inmates—another key difference with some of the other guards that have already been sentenced. Moreover, Gacad did not hold a special position of power or trust within FCI Dublin, such as warden or chaplain, that would make the abuse of power especially egregious and worthy of more severe punishment.

Not only is the nature of Gacad's crimes different, so too was his response to the investigation. He immediately came clean to agents and, during a lengthy meeting with the prosecution team, fully and truthfully told the government what happened at FCI Dublin, including information regarding misconduct by other guards. Not only that, Gacad agreed to plead guilty pursuant to a pre-indictment resolution, thereby foregoing a trial at which S.L. and other prisoners would have had to testify. In this respect, Gacad's situation is most like that of Ross Klinger, who took responsibility for his crimes early and agreed to cooperate with the government. But unlike Gacad, who has pleaded guilty to touching S.L.'s buttocks on multiple occasions, Klinger's abuse was more serious and expansive: he admitted to having sexual intercourse with two victims and oral sex and vaginal intercourse with a third. Klinger also admitted to giving money, jewelry, and gifts to some of these victims and/or their families.

Granted, Klinger provided information that the government was able to use in investigations of other FCI Dublin guards. But this was largely the product of circumstances. Klinger, who abused his victims approximately three years before Gacad, was one of the first FCI Dublin guards prosecuted, and

---

guards. It is therefore well aware of the underlying facts of these cases. The government nonetheless articulates this information here for ease of reference: former Warden Ray Garcia had at least three victims (*United States v. Garcia*, 4:21-cr-00429-YGR), Safety Administrator John Bellhouse had three victims (*United States v. Bellhouse*, 4:22-cr-00066-YGR), Recycling Technician Ross Klinger had three victims (*United States v. Klinger*, 4:22-cr-00031-YGR), Chaplain James Highhouse had six victims (*United States v. Highhouse*, 4:22-cr-00016-HSG), Cook Foreman Enrique Chavez pleaded guilty to abusing one victim but the government presented evidence that he victimized another (*United States v. Chavez*, 4:22-cr-00104-YGR), Cook Foreman Andrew Jones had four victims (*United States v. Jones*, 4:23-cr-00212-YGR), and CO Nakie Nunley had seven victims (*United States v. Nunley*, 4:23-cr-00213-YGR).

[5] The only other guard to be prosecuted solely for an abusive sexual contact was Chavez. The evidence for that count, however, showed that Chavez touched the victim's vagina and clitoris, had her touch his penis under his pants, and then touched her breasts and sucked on her nipples. *United States v. Chavez*, Case No. 4:22-cr-00104-YGR. There was also evidence that Chavez engaged in sexual acts with another victim at FCI Dublin and used his power to intimidate inmates.

worked directly under John Bellhouse, who was himself sexually abusing inmates. As a result, Klinger was better situated to provide the government with information that could be useful in other investigations. Gacad, on the other hand, began working at FCI Dublin on July 18, 2021—four days before agents executed search warrants on former Warden Ray Garcia—and resigned from BOP less than a year later. Moreover, by the time agents executed search warrants on Gacad's residence, all the charged cases involving the sexual abuse of prisoners at FCI Dublin had concluded except for one, and all the prisoners at FCI Dublin had been transferred to other prisons the month before (it has since closed completely). Though Gacad's information did not translate into a formal cooperation agreement with the government, it does not change the fact that he was honest and forthcoming.

In short, the most appropriate comparison for purposes of Gacad's sentencing is Klinger. Though Klinger's misconduct was more severe than Gacad's and involved more victims, both Klinger and Gacad took responsibility for their crimes and provided the government information about FCI Dublin, including information about other guards. The Court sentenced Klinger to time served with five years of supervised release, the first year of which had to be served on home detention. The parties agree that the same sentence is appropriate here.

## V. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Gacad to 5 years' probation, with the first 12 months to be served on home detention, and a $100 special assessment.

DATED: November 12, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/ Andrew Paulson
ANDREW PAULSON
ALETHEA M. SARGENT
Assistant United States Attorneys